**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Case Number:
Magistrate Judge:**

|  |  |
|---|---|
| | ) |
| | ) |
| KIRSTEN QUASHEN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| CARNIVAL CORPORATION, a Panamian | ) |
| Corporation, the owner and operator of the | ) |
| Trademark CARNIVAL CRUISE LINE. | ) |
| | ) |
| Defendant | ) |

**<u>COMPLAINT</u>**

Plaintiff Kirsten Quashen sues Defendant Carnival Corporation, a Panamanian Corporation that is the owner and operator of Carnival Cruise Line, a registered Trademark, for the reasons set forth below.

**JURISDICTION, PARTIES & VENUE**

1. This is an action for damages that exceed Seventy-Five Thousand ($75,000.00) Dollars.

2. Jurisdiction of this Court is invoked pursuant to 28 U. S. C. § 1332 as there is complete diversity between the parties.

3. At all times relevant, Plaintiff Kirsten Quashen has been a resident and citizen of the State of California.

1

4.   At all times relevant, Defendant Carnival Corporation, a Panamanian corporation, has been a foreign corporation with its principal place of business in Miami-Dade County, Florida.  Its headquarters, all officers, and "nerve center" are located at 3655 N.  W.  87th Avenue, MLGL 815, Miami, FL  33178.  *See Hertz Corp.  v.  Friend*, 559 U.  S.  77, 92-93 (2010).  Defendant Carnival Corporation is therefore a foreign citizen and a Florida citizen for purposes of 28 U.  S.  C.  § 1332 diversity jurisdiction.

5.   This court has personal jurisdiction over Defendant because it is headquartered in Florida and conducts substantial business activities out of Miami-Dade County, Florida where this district is located, in one or more of the following ways:

    a.   Operating, conducting, engaging in or carrying on a business venture in this state and/or county; and/or

    b.   Having an office or agency in this state and/or county; and/or

    c.   Engaging in substantial activity within this state; and/or

    d.   Committing one or more of the acts stated in Florida Statutes, Sections 48.  081, 48.  181 or 48.  193.

6.   Under 28 U.  S.  C.  § 1391, venue is proper in the United States District Court for the Southern District of Florida.

7.   At all times relevant, Carnival Corporation has been the owner of "Carnival Cruise Line," a Trademark registered with the State of Florida under Document Number T17000000819, to operate passenger cruise ships and numerous specifically identified activities incidental to or in furtherance of such operation.

8.   At all times relevant, Carnival Cruise Line, the Trademark owned by Carnival Corporation, has been the registered owner and operator of the passenger cruise ship, *Carnival*

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

*Inspiration*, which is flagged out of the Bahamas.  Thus, at all times relevant Defendant Carnival Corporation owned and/or operated the cruise ship on which the subject tort occurred.

9.  At all times relevant, Defendant Carnival was the employer of certain healthcare providers, including but not limited to "Dr. Martin, Forrest"[1] and Nurse Honey Babu, who provided medical care to the ship's crew and passengers aboard the *Carnival Inspiration*.

10. At all times relevant, Carnival Corporation acted through its employees, agents, apparent agents, servants, officers, or representatives – including but not limited to those responsible for designing, purchasing, inspecting, and maintaining the staterooms and particularly the closing mechanisms at issue, and for creating and enforcing policies and procedures related to same; their Marine procurement team; Nurse Honey Babu; and "Dr. Martin, Forrest"  – who were acting within the course of their employment, agency, apparent agency, servitude, office, or representative capacity, or under Carnival Corporation's control, and in furtherance of its interests, thereby making Defendant Carnival Corporation vicariously liable for their acts or omissions.

11.  Carnival Corporation, Inc.  and its registered trademark, Carnival Cruise Line, will be referred to as "Carnival" throughout this complaint.

12. The claim is one for negligence, brought at law and *in personam*, and includes claims under general maritime law.  *See, e. g., Am.  Ins.  Co.  v.  365 Bales of Cotton*, 26 U.  S.  511, 545-46 (1828).

13.  All conditions precedent to bringing this action have been performed, waived, or otherwise satisfied.

---

[1] The medical records provided read "Dr. Martin, Forrest" so it is presumed the correct individual is "Dr. Martin" whose first name is "Forrest," although it may be "Dr. Martin Forrest.  "  As such, Plaintiff alleges the name both ways for clarity and in an abundance of caution.  To be consistent with the records, Plaintiff will use "Dr. Martin" to refer to "Dr. Martin, Forrest" throughout.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

## FACTS COMMON TO ALL COUNTS
### The Incident in Question

14. On or about June 3, 2019, Plaintiff Kirsten Quashen was a passenger on *Carnival Inspiration*, which had set sail out of Los Angeles (Long Beach), California.  *See* Carnival Cruise Ticket attached hereto as Exhibit A.

15. At all times relevant, Plaintiff Quashen was a passenger on the subject cruise ship and therefore a business invitee while on the vessel.

16. On that date, at approximately 7:00 p. m., Ms. Quashen was severely injured when she was re-entering cabin u-107 from the balcony.  Ms. Quashen had her left hand on the door jam, bracing herself as she carefully stepped over the threshold, when the door unexpectedly slammed shut on her hand and severed her finger.

17. The hydraulic closing mechanism failed to prevent the door from closing rapidly and severing her finger.

18. Ms. Quashen was taken to the ship's infirmary immediately after being injured.  Her hand was bandaged by a nurse without the doctor evaluating it.  Rather, the records document the physician relied on the nurse's report of a "crush" injury to the finger.

19.  When security who was waiting to take Ms. Quashen back to her cabin saw the missing finger and learned she had been bandaged but not seen, they went into the infirmary and insisted the doctor evaluate it.  The physician whose name appears on the ship's infirmary records is "Dr. Martin, Forrest" and Plaintiff relies upon this statement by Defendant in naming Dr. Martin as its agent.

20. The nurse, who is identified in the records as Nurse Honey Babu, called Ms. Quashen back to the exam room and returned her severed finger to her in a jar.  Dr. Martin advised Ms.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

Quashen she "may have a fracture."  No x-rays were taken despite the availability of an x-ray machine.

21. The ship's physician did not, as he should have done, immediately transfer Ms. Quashen to a shoreside hospital given the time sensitive nature of re-attaching a digit.  Rather, she was told the doctor would initiate paperwork that was required to disembark her the following day at the next port of call.

22. On June 4th, after being disembarked with her finger in a jar, Ms. Quashen had to wait for the first available ferry to take her back to Long Beach, California, which delayed hospital-based and surgical treatment of her finger for approximately 24 hours.  By that time, the amputated finger was not salvageable.

23.  Ms. Quashen has since undergone significant care for her hand, including surgery. Her finger could not be re-attached and she has a permanent deformity that has caused and continues to cause loss of function and significant emotional distress.

24. These injuries and losses are permanent and continuing in nature.

25. On August 1, 2019, Ms. Quashen notified Defendant in writing of the full particulars of the claim.

## The Ship

26. Before the incident in question, Carnival custom built the *Carnival Inspiration,* and all *Fantasy*-class Carnival cruise ships, in a shipyard in Finland.  Carnival had the *Carnival Inspiration* custom built to specifications and designs which were made by or under the supervision and participation of Carnival.  *Carnival Inspiration* was designed by or at the direction of Carnival's shoreside New Build and other shoreside departments.  Carnival employs architects, naval designers, and marine engineers.

5

27. The *Carnival Inspiration* is a part of the *Fantasy* Class which includes the *Carnival Spirit, Carnival Fantasy, Carnival Imagination, Carnival Sensation, Carnival Fascination, Carnival Elation, Carnival Ecstasy* and *Carnival Paradise*.  Carnival has operated and maintained the other ships in *Fantasy* class, listed above, continuously since the time when each of those ships were first built and put into service.

28. Carnival also custom built to specifications and designs which were made by or under the supervision and participation of Carnival all of the *Fantasy* class ships, listed above.  The design and construction of these ships was under the supervision and with the participation of Carnival personnel who were stationed on-site in the shipyard during construction.  This included the types of doors and door-closing mechanism chosen and installed on the cabin balconies of the Fantasy class ships, including *Carnival Inspiration*.

29. The *Carnival Inspiration* was delivered to Carnival as finished in February 1996 and took her maiden voyage in March 1996.  Carnival has operated and maintained the ship continuously since that time.

30. Carnival has been responsible for regularly checking, inspecting, and replacing (when necessary or preventatively) the closing mechanisms on all its doors, specifically those doors leading from passenger cabins to their balconies, so that they will be safe for and not pose unreasonable risk to the passengers.

31. The Defendant knew or should have known that the closing mechanisms on the balcony doors of passenger cabins must be set to control the rate at which the doors closed so that a person, whether passenger or crewmember, could not get their hand slammed in a door with such force, weight and momentum as to sever a digit.  Defendant should have ensured the closing mechanisms were properly controlled and in working order.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

32.   The Defendant knew or should have known that the closing mechanisms on the balcony doors of passenger cabins must be maintained in working order such that they continuously controlled the rate at which the doors closed so that a person, whether passenger or crewmember, could not get their hand slammed in a door with such force, weight and momentum as to sever a digit.  Defendant should have ensured the closing mechanisms were maintained in safe working order.

33. The Defendant knew or should have known that, to ensure the closing mechanisms on the balcony doors of passenger cabins did not pose an unreasonable risk to the passengers or crewmembers, they must be inspected regularly to ensure they remain in safe working order.

34. Defendant had actual knowledge of the dangerous condition and/or had constructive knowledge of the dangerous condition because it was created by improper adjustment to the closing mechanism, or by wear and tear over time, and should have been discovered and remedied before Plaintiff Kirsten Quashen came into contact with it and suffered the traumatic severing of her finger.

35. Carnival had constructive knowledge of the dangerous condition by, among other things, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition— including that the condition (closing mechanism) did not slow or prevent the balcony door from closing rapidly, forcefully, and without warning, thus posing the risk that individuals would get trapped between the door and the frame on *Carnival Inspiration*—was unreasonably dangerous in violation of industry standards, regulations, and codes, and was apparent to any of Carnival's personnel cleaning, inspecting or maintaining the cabin, but not readily apparent to Kirsten Quashen; and/or (c) the fact that the closing mechanism, when exposed to a Marine Environment (whether installed on the outside or inside of the door), can rust and must therefore be inspected regularly to ensure ongoing

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

adequate and safe performance; and/or (d) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity.  Thus the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have discovered it and/or known about it.

36. In the alternative, Defendant created the dangerous condition through its active negligence and so notice is not required.

## COUNT I
## CLAIM FOR NEGLIGENT FAILURE TO MAINTAIN

37. Plaintiffs adopts and re-alleges paragraphs one through thirty-six (1-36) as if fully set forth herein.

38. Defendant Carnival owes a "duty to exercise reasonable care for the safety of its passengers," including Kirsten Quashen.  *See Hall v.  Carnival*, 2004 WL 1621209 (Fla.  3d DCA 2004).  The Defendant also owes a "duty to exercise reasonable care under the circumstances.  *See Harnesk v.  Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.  D.  Fla.  1991).

39. Defendant Carnival, by and through its agents, apparent agents, employees, servants, representatives, and contractors, had undertaken a duty to provide Kirsten Quashen with a safe ship, reasonably fit for its intended purpose, that did not pose her any unreasonable risk of harm. That includes the duty to maintain the ship, specifically including the closing mechanisms on cabin balcony doors, in safe working order so that they did not pose or expose Ms. Quashen to unreasonable risk.

40. Carnival owes a duty as a common carrier to its passengers to maintain the ship, including the cabins and specifically doors leading onto and off the balconies of cabins, in a safe condition.  Carnival owes a duty of reasonable care under the circumstances, which are that

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

Carnival owns and/or manages more than twenty (20) cruise ships, including the *Carnival Inspiration*, that regularly operate in and are exposed to the elements of a marine environment. Carnival should know of the need to provide marine grade hardware on its doors, and to regularly inspect, repair, maintain, and replace them so that despite exposure to marine elements they are always in safe working order.  It also should know that they must be set to safe closing speeds and regularly inspected, repaired, maintained, and replaced to ensure that they are in fact operating at safe closing speeds so as to not to pose unreasonable risk of harm to passengers, including Kirsten Quashen.

41. Carnival also should have known that in a marine environment at sea, gusts of wind can suddenly provide significant force that, in the absence of a properly installed, set, and working closing mechanism, can cause a balcony door to slam shut quickly and without warning to an unsuspecting and unfamiliar passenger to whom this risk is not readily apparent, thus posing the unreasonable risk of harm to that passenger when safety mechanisms are not in place and in working order.

42. In the alternative, notice to the Defendant is not required because the Defendant (a) engaged in and was guilty of negligent maintenance; and/or (b) through its own acts and/or omissions the Defendant caused the dangerous conditions to come about or exacerbated the dangerous conditions.  Therefore, no notice to the Defendant is required.

43. Carnival at all relevant times was under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U. S.  Senate-ratified international Safety of Life at Sea (SOLAS) treaty.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

44. Carnival at all relevant times was under a legal duty to comply with industry safety standards that are promulgated by the International Maritime Organization (IMO), the U. S. Coast Guard, the U. S. Access Board, and the American Society for Testing and Materials (ASTM) International.

45. Notwithstanding the duties owed and/or undertaken by Defendant, it breached its duty to Plaintiff Kirsten Quashen to maintain the ship, including the balcony doors of the *Carnival Inspiration*, in a safe condition including through one or more of the following ways:

   a. By negligently and carelessly failing to use reasonable care;

   b. By negligently and carelessly failing to require, as part of the design of its ship, hardware on the balcony doors that would prevent them from slamming and injuring passengers;

   c. By negligently and carelessly failing to require, as part of the design of its ship, hardware on the balcony doors that would stand up to the harsh marine environment and prevent them from slamming and injuring passengers;

   d. By negligently and carelessly failing to require, as part of the design of its ship, safety mechanisms on the balcony doors that would prevent them from slamming and injuring passengers;

   e. By negligently and carelessly failing to perform appropriate physical examinations and inspections at the time of installation of the hardware on the balcony doors to ensure the hardware would prevent the balcony doors from slamming and injuring passengers;

   f. By negligently and carelessly failing to perform appropriate physical examinations and inspections after installation of the hardware on the balcony doors to ensure the hardware remained in a suitable and safe condition to prevent the balcony doors from slamming and injuring passengers;

   g. By negligently and carelessly failing to create appropriate protocols and procedures to require physical examinations and inspections after installation of the hardware on the balcony doors to ensure the hardware remained in a suitable and safe condition to prevent the balcony doors from slamming and injuring passengers;

   h. By negligently and carelessly failing to implement appropriate protocols and procedures to require physical examinations and inspections after installation of

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

the hardware on the balcony doors to ensure the hardware remained in a suitable and safe condition to prevent the balcony doors from slamming and injuring passengers;

i.  By negligently and carelessly failing to enforce appropriate protocols and procedures to require physical examinations and inspections after installation of the hardware on the balcony doors to ensure the hardware remained in a suitable and safe condition to prevent the balcony doors from slamming and injuring passengers;

j.  By negligently and carelessly failing to discover the malfunctioning hardware on the balcony door before it injured Ms. Quashen;

k.  By negligently and carelessly failing to replace the malfunctioning hardware on the balcony door before it injured Ms. Quashen;

l.  By negligently and carelessly failing to report the malfunctioning hardware on the balcony door to maintenance or another division that would have replaced it with a safe closing mechanism before it injured Ms. Quashen; and

m.  By negligently and carelessly failing to replace the hardware on the balcony doors at regular intervals to prevent them from deteriorating to the point they were in an unsuitable and unsafe condition that would not prevent the balcony doors from slamming and injuring passengers;

46. Carnival also failed to comply with comply with applicable industry standards, statutes, and/or regulations, which invokes the Pennsylvania Rule, and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.  Carnival's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

47. Carnival's failure to maintain the ship, including the balcony doors of the *Carnival Inspiration*, in a safe condition proximately caused or substantially contributed to causing Kirsten Quashen's injuries.  Had Carnival properly maintained the ship, including the balcony doors of the *Carnival Inspiration*, in a safe condition, Kirsten Quashen would not have had her hand slammed in the balcony door and would not have had her finger severed on June 3, 2019.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

48. Carnival's negligence proximately caused permanent injuries and damages to Kirsten Quashen in the past, and will continue to do so in the future.  Ms. Quashen has in the past suffered and will in the future continue to suffer bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, rehabilitation, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a pre-existing condition.  Her special damages include but are not limited to the lost value of home-modifications for a spa business that she can no longer operate due to the injury.  These losses are permanent and continuing in nature and Kirsten Quashen will continue to suffer these losses in the future.

WHEREFORE, Plaintiff, Kirsten Quashen, demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to compensatory damages, costs of this action, post-judgment interest, and further demands trial by jury of all issues so triable as a matter of right, and such further relief as this Court deems just and proper.

## COUNT 2
## CLAIM FOR NEGLIGENT FAILURE TO MAINTAIN

49. Plaintiffs adopts and re-alleges paragraphs one through thirty-six (1-36) as if fully set forth herein.

50. Defendant Carnival owes a "duty to exercise reasonable care for the safety of its passengers," including Kirsten Quashen.  *See Hall v.  Carnival*, 2004 WL 1621209 (Fla.  3d DCA 2004).  The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v.  Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.  D.  Fla.  1991).

51. In addition, the Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v.  Celebrity*

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

*Cruises, Inc,* 339 F. 3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So. 2d 248 (Fla. 3d DCA 1985).

52. Defendant Carnival owes a duty as a common carrier to its passengers to warn of dangers known to Carnival where Carnival invites or reasonably should expect passengers to go, including any balconies to which they could be expected to have access. As a result, Carnival's duty of care included warning Ms. Quashen and anyone who might come into contact with the subject balcony door of the dangerous posed by its closing mechanism on June 3, 2019.

53. The unreasonably unsafe condition existed for a sufficient length of time that Defendant knew, or in the exercise of ordinary care should have known, of its existence and warned everyone in the zone of risk.

54. In the alternative, Defendant created the dangerous conditions itself or actually knew of it yet failed to repair it or warn about it, and thus notice is not required.

55. Moreover, Carnival at all relevant times was under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U. S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty.

56. Carnival at all relevant times was under a legal duty to comply with industry safety standards that are promulgated by the International Maritime Organization (IMO), the U. S. Coast Guard, the U. S. Access Board, and the American Society for Testing and Materials (ASTM) International.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

57. Notwithstanding the duties owed and/or undertaken by Defendant, it breached its duty to Plaintiff Kirsten Quashen to warn of the dangers posed by the closing mechanism on the balcony door, including through one or more of the following ways:

    a.  By negligently and carelessly failing to use reasonable care in warning passengers of dangers that would not be obvious to passengers before they were exposed;

    b.  By negligently and carelessly failing to place signs, stickers, tape, or other visual or written notices on or near the dangerous condition on board the *Carnival Inspiration* so that passengers would know to avoid the hazard while it was pending replacement and repair; and

    c.  By negligently and carelessly failing to verbally warn the occupants of the cabin of the dangerous condition on board the *Carnival Inspiration* so that passengers who had access to it would know to avoid the hazard while it was pending replacement and repair.

58. Carnival also failed to comply with comply with applicable industry standards, statutes, and/or regulations, which invokes the Pennsylvania Rule, and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.  Carnival's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

59. Carnival's failure to warn Kirsten Quashen of the dangerous condition proximately caused or substantially contributed to causing Kirsten Quashen's injuries.  Had Carnival properly warned Ms. Quashen of the hazards posted by the balcony door, she would have been aware of the dangerous condition and could have protected herself from coming into contact with the dangerous door, or at least from having any portion of her body between the door and the frame on June 3, 2019.

60. Carnival's negligence proximately caused permanent injuries and damages to Kirsten Quashen in the past, and will continue to do so in the future.  Ms. Quashen has in the past suffered and will in the future continue to suffer bodily injury, pain and suffering, disability, disfigurement,

mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, rehabilitation, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a pre-existing condition.  Her special damages include but are not limited to the lost value of home-modifications for a spa business that she can no longer operate due to the injury.  These losses are permanent and continuing in nature and Kirsten Quashen will continue to suffer these losses in the future.

WHEREFORE, Plaintiff, Kirsten Quashen, demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to compensatory damages, costs of this action, post-judgment interest, and further demands trial by jury of all issues so triable as a matter of right, and such further relief as this Court deems just and proper.

## COUNT 3
## CLAIM FOR NEGLIGENT TRAINING AND SUPERVISION OF PERSONNEL

61. Plaintiffs adopts and re-alleges paragraphs one through thirty-six (1-36) as if fully set forth herein.

62. Defendant Carnival owes a "duty to exercise reasonable care for the safety of its passengers," including Kirsten Quashen.  *See Hall v.  Carnival*, 2004 WL 1621209 (Fla.  3d DCA 2004).  The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v.  Carnival Cruise Lines, Inc.* 1991 WL 329584 (S.  D.  Fla.  1991).

63. Defendant Carnival owes a duty as a common carrier to its passengers to properly and adequately train its crewmembers to purchase, install, examine, inspect, report malfunctions of, and replace malfunctioning or defective safety equipment onboard, including but not limited to the closing mechanisms that control speed on the balcony doors with which any passenger might reasonably expect to come into contact.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

64. Defendant Carnival owes a duty as a common carrier to its passengers to properly and adequately supervise its crewmembers to ensure that they purchase, install, examine, inspect, report malfunctions of, and replace malfunctioning or defective safety equipment onboard, including but not limited to the closing mechanisms that control speed on the balcony doors with which any passenger might reasonably expect to come into contact.

65. Moreover, Carnival at all relevant times was under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U. S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty.

66. Carnival at all relevant times was under a legal duty to comply with industry safety standards that are promulgated by the International Maritime Organization (IMO), the U. S. Coast Guard, the U. S. Access Board, and the American Society for Testing and Materials (ASTM) International.

67. Notwithstanding the duties owed and/or undertaken by Defendant, it breached its duty to Plaintiff Kirsten Quashen to properly and adequately train and supervise its personnel as it relates to the dangers posed by the closing mechanism on balcony doors, including through one or more of the following ways:

    a.  By negligently and carelessly failing to use reasonable care in training its personnel regarding hazards posed by faulty or nonfunctioning closing mechanisms on balcony doors;

    b.  By negligently and carelessly failing to use reasonable care in supervising its personnel regarding hazards posed by faulty or nonfunctioning closing mechanisms on balcony doors

    c.  By negligently and carelessly failing to properly and adequately train its crewmembers to purchase marine-grade products for installation and replacement of safety equipment such as closing mechanisms on balcony doors onboard;

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

d.  By negligently and carelessly failing to properly and adequately supervise its crewmembers to ensure they purchased marine-grade products for installation and replacement of safety equipment such as closing mechanisms on balcony doors onboard;

e.  By negligently and carelessly failing to properly and adequately train its crewmembers to install marine-grade safety equipment such as closing mechanisms on balcony doors onboard;

f.  By negligently and carelessly failing to properly and adequately supervise its crewmembers to ensure they installed marine-grade safety equipment such as closing mechanisms on balcony doors onboard;

g.  By negligently and carelessly failing to properly and adequately train its crewmembers to regularly and routinely examine safety equipment such as closing mechanisms on balcony doors onboard;

h.  By negligently and carelessly failing to properly and adequately supervise its crewmembers to ensure they regularly and routinely examined safety equipment such as closing mechanisms on balcony doors onboard;

i.  By negligently and carelessly failing to properly and adequately train its crewmembers to regularly and routinely inspect safety equipment such as closing mechanisms on balcony doors onboard;

j.  By negligently and carelessly failing to properly and adequately supervise its crewmembers to ensure they regularly and routinely inspected safety equipment such as closing mechanisms on balcony doors onboard;

k.  By negligently and carelessly failing to properly and adequately train its crewmembers to regularly and routinely report malfunctions or disrepair of safety equipment such as closing mechanisms on balcony doors onboard to the department or division in charge of repairing such safety equipment;

l.  By negligently and carelessly failing to properly and adequately supervising its crewmembers to ensure they regularly and routinely reported malfunctions or disrepair of safety equipment such as closing mechanisms on balcony doors onboard to the department or division in charge of repairing such safety equipment;

m.  By negligently and carelessly failing to properly and adequately train its crewmembers to regularly and routinely replace safety equipment such as closing mechanisms on balcony doors onboard to the department or division when they were reported as malfunctioning or in disrepair;

17

n.  By negligently and carelessly failing to properly and adequately supervise its crewmembers to ensure they regularly and routinely replaced safety equipment such as closing mechanisms on balcony doors onboard to the department or division when they were reported as malfunctioning or in disrepair;

o.  By negligently and carelessly failing to properly and adequately train its crewmembers to regularly and routinely replace safety equipment such as closing mechanisms on balcony doors onboard to the department or division at intervals sufficient to prevent them from falling into disrepair;

p.  By negligently and carelessly failing to properly and adequately supervise its crewmembers to ensure they regularly and routinely replaced safety equipment such as closing mechanisms on balcony doors onboard to the department or division at intervals sufficient to prevent them from falling into disrepair

q.  By negligently and carelessly failing to train its crewmembers to place visual warnings so that passengers who had access to the cabin with the dangerous condition on board the *Carnival Inspiration* would know to avoid the hazard while it was pending replacement and repair;

r.  By negligently and carelessly failing to supervise its crewmembers to ensure they placed visual warnings so that passengers who had access to the cabin with the dangerous condition on board the *Carnival Inspiration* would know to avoid the hazard while it was pending replacement and repair;

s.  By negligently and carelessly failing to train its crewmembers to verbally warn passengers who had access to the cabin with the dangerous condition on board the *Carnival Inspiration* so that they would know to avoid the hazard while it was pending replacement and repair; and

t.  By negligently and carelessly failing to supervise its crewmembers to ensure they verbally warned passengers who had access to the cabin with the dangerous condition on board the *Carnival Inspiration* so that they would know to avoid the hazard while it was pending replacement and repair.

68. Carnival also failed to comply with comply with applicable industry standards, statutes, and/or regulations, which invokes the Pennsylvania Rule, and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.  Carnival's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

69. Carnival's failure to properly and adequately train and supervise its personnel in the manners described above proximately caused or substantially contributed to causing Kirsten Quashen's injuries.  Had Carnival properly and adequately trained and/or supervised its personnel in the manner described above, Ms. Quashen would not have come in contact with the dangerous balcony door on June 3, 2019.

70. Carnival's negligence proximately caused permanent injuries and damages to Kirsten Quashen in the past, and will continue to do so in the future.  Ms. Quashen has in the past suffered and will in the future continue to suffer bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, rehabilitation, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a pre-existing condition.  Her special damages include but are not limited to the lost value of home-modifications for a spa business that she can no longer operate due to the injury.  These losses are permanent and continuing in nature and Kirsten Quashen will continue to suffer these losses in the future.

WHEREFORE, Plaintiff, Kirsten Quashen, demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to compensatory damages, costs of this action, post-judgment interest, and further demands trial by jury of all issues so triable as a matter of right, and such further relief as this Court deems just and proper.

## COUNT 4
## CLAIM FOR NEGLIGENT MEDICAL CARE AND
## TREATMENT BY EMPLOYEES OR ACTUAL AGENTS

71. Plaintiffs adopts and re-alleges paragraphs one through thirty-six (1-36) as if fully set forth herein.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

72. The Defendant owed a duty to Kirsten Quashen to provide prompt and appropriate medical care upon her presentation to the ship's infirmary on June 3, 2019 and thereafter up until she was disembarked and no longer under the care of Carnival's medical personnel.

73. Carnival, through its employees or direct agents, undertook a duty to provide proper care to Kirsten Quashen with that level of care, skill, and treatment that is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

74. Notwithstanding the duty undertaken by Defendant, it breached its duty to Plaintiff Kirsten Quashen by engaging in the following acts or omissions, all of which deviated from and fell below the accepted standards of medical care and treatment:

   a. By negligently and carelessly failing to properly assess the condition of Kirsten Quashen;

   b. By negligently and carelessly failing to timely diagnose and appropriately treat Kirsten Quashen;

   c. By negligently and carelessly failing to provide proper care to Kirsten Quashen in that her health care providers did not meet the level of care, skill and treatment that is recognized as acceptable and appropriate by reasonably prudent similar health care providers;

   d. By negligently and carelessly failing to possess the requisite knowledge appropriate to practice critical care or emergent care;

   e. By negligently and carelessly failing to possess the requisite knowledge regarding appropriate measures to take in connection with Kirsten Quashen's care;

   f. By negligently and carelessly failing to perform appropriate physical examinations or diagnostic tests, or to order that such examinations or tests be performed;

   g. By negligently and carelessly failing to take action to timely evacuate Kirsten Quashen when it was medically inappropriate to fail to take action and at a time when it jeopardized the health, safety, and body of Kirsten Quashen;

   h. By negligently and carelessly failing to follow appropriate guidelines emergent surgical consult for someone who has suffered an amputation;

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

     i.   By negligently and carelessly failing to adequately warn Kirsten Quashen of the emergent need for surgical consult to address her condition;

     j.   By negligently and carelessly failing to examine and/or monitor Kirsten Quashen so ensure her finger would not be medically compromised;

     k.   By negligently and carelessly failing to provide adequate care to Kirsten Quashen;

     l.   By negligently and carelessly failing to use reasonable care in the provision of medical care to Kirsten Quashen;

     m.   By negligently and carelessly failing to evacuate Ms. Quashen to an emergency transport vessel or aircraft in sufficient time to save her finger so that it could be reattached;

     n.   By negligently and carelessly failing to request consultation with appropriate medical specialists shoreside, including by telemedicine, who would have prescribed, ordered, and/or recommended Ms. Quashen be disembarked to an emergency transport vessel or aircraft in sufficient time to save her finger so that it could be reattached;

     o.   By negligently and carelessly failing to properly diagnose, treat, and care for Kirsten Quashen; and

     p.   By negligently and carelessly failing to invoke the chain of command to secure appropriate, safe, and reasonable medical care for Kirsten Quashen, so as to prevent the delay in disembarkation that resulted in the lost opportunity to reattach Ms. Quashen's finger.

75. Carnival acknowledged through its hiring and holding out of its medical personnel, including "Dr. Martin, Forrest" and all nurses, that they acted for Carnival while administering care to *Carnival Inspiration* passengers aboard *Carnival Inspiration*.  Dr. Martin and Nurse Honey Babu manifested the acceptance of that undertaking by providing care to Carnival's passengers, in Carnival's medical center, onboard Carnival's vessel, and Carnival controlled or had the right to control the medical personnel's actions, including but not limited to responding to or vetoing a request for emergency evacuation of a patient for medical reasons.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

76. Carnival directly paid the medical personnel for their work in the ship's medical center.

77. The medical center was designed, created, owned, operated, and maintained by Carnival.

78. Carnival had the right to fire its medical personnel, including "Dr. Martin, Forrest" and Nurse Honey Babu.

79. As a direct and proximate result of "Dr. Martin, Forrest's" acts or omissions set forth above, Kirsten Quashen has in the past suffered and will in the future continue to suffer bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, rehabilitation, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a pre-existing condition.  Her special damages include but are not limited to the lost value of home-modifications for a spa business that she can no longer operate due to the injury.  These losses are permanent and continuing in nature and Kirsten Quashen will continue to suffer these losses in the future.

WHEREFORE, Plaintiff, Kirsten Quashen, demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to compensatory damages, costs of this action, post-judgment interest, and further demands trial by jury of all issues so triable as a matter of right, and such further relief as this Court deems just and proper.

## COUNT 5
## NEGLIGENCE FOR VICARIOUS LIABILITY BASED UPON APPARENT AGENCY

80. Plaintiff Kirsten Quashen adopts and paragraphs one through thirty-six (1-36) as if fully set forth herein.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

81. The Defendant owed a duty to Kirsten Quashen to provide prompt and appropriate medical care upon her presentation to the ship's infirmary on June 3, 2019 and thereafter up until she was disembarked and no longer under the care of Carnival's medical personnel.

82. Carnival, through its employees or direct agents, undertook a duty to provide proper care to Kirsten Quashen with that level of care, skill, and treatment that is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

83. Notwithstanding the duty undertaken by Defendant, it breached its duty to Plaintiff Kirsten Quashen by engaging in the following acts or omissions, all of which deviated from and fell below the accepted standards of medical care and treatment:

    a.  By negligently and carelessly failing to properly assess the condition of Kirsten Quashen;

    b.  By negligently and carelessly failing to timely diagnose and appropriately treat Kirsten Quashen;

    c.  By negligently and carelessly failing to provide proper care to Kirsten Quashen in that her health care providers did not meet the level of care, skill and treatment that is recognized as acceptable and appropriate by reasonably prudent similar health care providers;

    d.  By negligently and carelessly failing to possess the requisite knowledge appropriate to practice critical care or emergent care;

    e.  By negligently and carelessly failing to possess the requisite knowledge regarding appropriate measures to take in connection with Kirsten Quashen's care;

    f.  By negligently and carelessly failing to perform appropriate physical examinations or diagnostic tests, or to order that such examinations or tests be performed;

    g.  By negligently and carelessly failing to take action to timely evacuate Kirsten Quashen when it was medically inappropriate to fail to take action and at a time when it jeopardized the health, safety, and body of Kirsten Quashen;

    h.  By negligently and carelessly failing to follow appropriate guidelines emergent surgical consult for someone who has suffered an amputation;

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

i.   By negligently and carelessly failing to adequately warn Kirsten Quashen of the emergent need for surgical consult to address her condition;

j.   By negligently and carelessly failing to examine and/or monitor Kirsten Quashen so ensure her finger would not be medically compromised;

k.   By negligently and carelessly failing to provide adequate care to Kirsten Quashen;

l.   By negligently and carelessly failing to use reasonable care in the provision of medical care to Kirsten Quashen;

m.   By negligently and carelessly failing to evacuate Ms. Quashen to an emergency transport vessel or aircraft in sufficient time to save her finger so that it could be reattached;

n.   By negligently and carelessly failing to request consultation with appropriate medical specialists shoreside, including by telemedicine, who would have prescribed, ordered, and/or recommended Ms. Quashen be disembarked to an emergency transport vessel or aircraft in sufficient time to save her finger so that it could be reattached;

o.   By negligently and carelessly failing to properly diagnose, treat, and care for Kirsten Quashen; and

p.   By negligently and carelessly failing to invoke the chain of command to secure appropriate, safe, and reasonable medical care for Kirsten Quashen, so as to prevent the delay in disembarkation that resulted in the lost opportunity to reattach Ms. Quashen's finger.

84. At all times relevant, Defendant Carnival held out its medical staff, including its doctors and nurses, as its apparent agents who work in Carnival's "medical centers" on the vessel.  The Defendant, Carnival, promotes its medical staff and represents them as being their apparent agents through brochures, internet advertising, and communications to passengers on the vessel.  Carnival held out its staff, including Martin, M. D. and Honey Babu, R.N., as being its direct employees or its actual agents.

24

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

85. Carnival promotes the idea that the medical staff who work in its "medical centers" are its apparent agents as part of a marketing tool to induce passengers such as the Plaintiff to cruise on its ships.

86. Defendant Carnival manifested to Plaintiff that its medical staff, including Nurse Honey Babu and "Dr. Martin, Forrest", were acting as its apparent agents in various ways, including but not limited to the following:

    a.  The doctor and nurse both worked at what the Defendant describes in its advertising as its "medical centers";

    b.  That the "medical centers" are owned and operated by Carnival, which pays to stock the "medical centers" with all supplies, various medicines and equipment;

    c.  that the passenger is billed directly by Carnival through the passengers' Sail & Sign Card, whereas the "medical staff', including the doctor and nurse, are paid salaries by Carnival, to work in the "medical centers"; and

    d.  that Carnival has the right to hire and fire the physicians and nurses, including Dr. Martin.

87. The medical staff in this case, including Dr. Martin and Honey Babu, R.N., were required by Carnival to wear Carnival uniforms which included name tags, and which displayed the Carnival name and logo.

88. Further, the cruise line holds out the ship's physicians and medical staff as the apparent agents of the cruise line.  The Defendant through its actions and conduct represents to its cruise passengers including, but not limited to the Plaintiff herein and his family, that the shipboard physicians and medical staff work for the benefit of the Defendant.  These actions and conduct of the cruise-line include but are not limited to the following:

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

a. The Defendant controls cruise line physicians attire, which includes, at times, a uniform with epaulettes and stripes similar to other crewmembers;

b. The Defendant cruise line offers physicians benefits including senior officer status, round-trip transportation from residence to the ship, uniforms, meals, private furnished cabins with refrigerators, telephones, computers with internet access, daily housekeeping services, and indemnification and health care;

c. The Defendant cruise line requires that the ship's physicians sail with the ship;

d. The Defendant cruise line provides the onboard Medical Center, including all of its supplies, equipment, and personnel;

e. The Defendant cruise line allows and requires the ship's physicians to operate and provide services out of the ship's Medical Center which is provided by the cruise line and which is equipped by the cruise line;

f. The Defendant cruise line charges the services of the medical center, which includes services of the ship's doctors and other medical staff and charges for the medical equipment and goods provided by the cruise line, to the passenger's onboard Sign & Sail Account;

g. The ship's physicians represented themselves to passengers that they are employees of Defendant, CARNIVAL;

h. The Defendant cruise line limits the hours and area of the ship where passengers can receive medical services to the ship's Medical Center, which is staffed exclusively by shipboard medical personnel;

i. The Defendant publishes the Medical Center's daily office hours in its flyer distributed to all passengers aboard its ships;

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

j.   The Defendant cruise line requires the shipboard physicians and medical staff to be on call 24 hours to attend to passenger medical emergencies;

k.   The Defendant cruise line requires all shipboard medical personnel to create medical records for the care of passengers in the shipboard electronic medical records system, for which each provider has a separate login, password, and access, and over which the Defendant cruise line maintains possession, custody, and exclusive control once they are created.

89. The ship's physician is considered to be an Officer on board the vessel and a member of the crew, and was introduced to the passengers as one of the ship's Officers.

90. Both the ship's doctor and the nurses were held out to the passengers by CARNIVAL as members of the ship's crew.

91. The Defendant put the ship's physician and nurse under the command of the ship's superior officers, including the Master of the ship.

92. The cruise line represents to immigration authorities that the physician and nurse are members of the ship's crew.

93. Both the ship's doctor and nurses are permitted to eat with the ship's crew and to use the exercise facilities that are designated for the ship's crew.

94. The ship's physician and nurse provide services in the ship's "medical centers" and the Plaintiff had no alternative to going to the ship's medical center to be seen for her injury while onboard Defendant's vessel.

95. At the time of Plaintiff's injury, she was seen, examined and treated by the ship's nurse and/or physician, in the ship's medical center, onboard the ship owned by Defendant Carnival.

27

96. She was taken to the ship's medical center in a wheelchair by shipboard personnel who responded to the regarding the amputation that occurred onboard.

97. Based on the foregoing, the Plaintiff reasonably believed that the ship's nurse and doctor were acting as direct employees or actual agents on behalf of the Defendants, and was never given any reason to believe otherwise.

98. Kirsten Quashen relied to her detriment on her belief that the physician and nurse were direct employees or actual agents of the Defendant in that Ms. Quashen followed the advice of Carnival's nurse and/or physician and did not seek any further medical testing or evaluation through telemedicine or a shoreside call, and by not requesting an emergent evacuation.  Ms. Quashen would not have followed the advice of the ship's medical personnel had he suspected they were not the agents of Carnival.

99. As a result of the Plaintiff's reliance upon the ship's medical staff, Ms. Quashen was not properly treated and she lost the chance to have the finger surgically re-attached at a time when more likely than not the attachment would have been effective.

100.    Defendant Carnival is liable to the Plaintiff for any and all damages as a result of negligent medical care by the physician and/or nurse under the theory of apparent agency.

101.    As a direct and proximate result of "Dr. Martin, Forrest's" acts or omissions set forth above, Kirsten Quashen has in the past suffered and will in the future continue to suffer bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, rehabilitation, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a pre-existing condition.  Her special damages include but are not limited to the lost value of home-modifications for a spa business that

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

she can no longer operate due to the injury.  These losses are permanent and continuing in nature and Kirsten Quashen will continue to suffer these losses in the future.

WHEREFORE, Plaintiff, Kirsten Quashen, demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to compensatory damages, costs of this action, post-judgment interest, and further demands trial by jury of all issues so triable as a matter of right, and such further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury of all issues so triable as a matter of right.

Dated June 2, 2020.

COLSON HICKS EIDSON
Attorneys for Plaintiff
255 Alhambra Circle, PH
Coral Gables, Florida  33134
(305) 476-7400


By  /s/ Deborah J. Gander
    Deborah J. Gander
    Florida Bar No. 34363
    Deborah@colson.com
    Eservice@colson.com